GREAT LAKES TANNING COMPANY, Appellant, vs. CITY OF MILWAUKEE and another, Respondents.

*January 16—February 25, 1947.*

For the appellant there were briefs by *B. F. Saltzstein* and *Howard G. Brown,* attorneys, and *Joseph P. Brazy* of counsel, all of Milwaukee, and oral argument by *Mr. Brazy* and *Mr. Brown.*

For the respondents there was a brief by *Walter J. Mattison,* city attorney, *Charles W. Babcock,* first assistant city attorney, and *John A. Decker,* assistant city attorney, and oral argument by *Mr. Decker* and *Mr. Babcock.*

A brief was filed by *Max Raskin* of Milwaukee, attorney for Theodore Fredricks, as *amicus curiæ.*

WICKHEM, J. The facts as they appear from the pleadings and affidavits are as follows : Plaintiff is a Wisconsin corporation organized in 1945 and its principal business is the processing of the skins of lambs or sheep partly shorn before slaughter. The process in its relation to ordinary tannery operations will be disclosed in its proper place in the statement of facts.

Plaintiff located an available factory at 3100 West Auer avenue, Milwaukee. This building was suitable for factory purposes and was occupied by a plant engaged in the storage

and binding of wastepaper and rags. The area is classified as a heavy-industry area under the Milwaukee zoning ordinance and is surrounded by foundries, a steel-stamping company, concrete building-block manufacturers, wholesale fish dealer, chemical manufacturing, and a slaughterhouse. It is within a block and a half of the A. O. Smith plant, a huge factory covering nearly a quarter of a section of land. Carbarns of the Transport Company are only two blocks away. It is conceded, however, that a majority of the buildings within a radius of four blocks from that involved in this case are devoted to residential purposes. The materiality of this concession will shortly appear.

On December 26, 1945, plaintiff applied to defendant Gurda, building inspector of the city of Milwaukee, for a certificate of occupancy under the Milwaukee city ordinance. The application is to occupy the entire structure for a tannery. On January 2, 1946, a certificate of occupancy was issued granting permission to plaintiff "to occupy the entire building located at 3100 West Auer avenue. To be used for tannery as provided for in section 9–28, part IIIA, of Milwaukee Code of 1941. . . ." The section quoted provides in substance that it shall be unlawful to use or permit the use of any building thereafter built, altered, or converted, wholly or in part, in its use or structure until a certificate of occupancy to the effect that the buildings conform to the provisions of the zoning law shall have been issued by the inspector of buildings. The section requires that the inspector of buildings issue a certificate within ten days after request is filed, provided the buildings and use conform to all the requirements of part IIIA of the zoning code. The certificate concludes with this note : "This permit affects only the use to which the premises may be put and not the right of the occupant to conduct a licensed business or one otherwise prohibited by law." It is conceded that plaintiff's proposed use of the premises conforms to all

requirements of part IIIA of the zoning code of the city of Milwaukee.

Sec. 80–12 of ch. 80 of the Milwaukee code of 1941, being a part of the sanitary code entitled "Nuisances," provides that "No tannery shall hereafter be erected or maintained in any location within the city of Milwaukee which is within four blocks from a public or parochial school within said city or in any location where the majority of the buildings within a radius of four blocks are devoted to residence purposes. . . ." A penalty is provided for each day of illegal maintenance. This section antedates the zoning code by several years.

Upon his attention being called to this section by a complaining property owner, defendant, Gurda, on March 21, 1946, revoked the occupancy permit, and this action was thereafter commenced.

In reliance upon its certificate, plaintiff entered into a ten-year lease upon the premises at an annual rental of $12,000. It expended or obligated itself to pay $50,000 in equipping the building for its business. It expended large sums of money for materials, purchased skins for processing, obligated itself to furnish its finished product to customers in large quantities, deliveries to commence about June 1, 1946, and made arrangements for the use of a warehouse outside the city of Milwaukee. According to plaintiff's affidavits it did not know of the sanitary-code provision prohibiting tanneries in the location to which the certificate applies. Its business is a dry fur-processing which does not include the usual process carried on by a tannery, and does not result in odors or any of the obnoxious qualities ordinarily attributed to tanneries. Twelve tanneries are located in the city of Milwaukee, all in violation of the sanitary code. These have operated for years and no steps have been taken to stop their operation. Plaintiff's affidavits assert that there is no place within the city limits where a tannery can be located to comply with the sanitary code. A

stipulation was filed with the record to the effect that since the entry of judgment, sec. 80–12 of the Milwaukee code of ordinances, entitled "Location of Tanneries," has been amended to read as follows: "The provisions of this section shall not apply to a tannery in existence on November 15, 1920, and continuously operated since that date."

The principal contention of plaintiff is that the occupancy permit must issue where the use of the building is in conformity with the zoning ordinance, and that it is no concern of the building inspector whether the business operated on the premises requires any special license or is in violation of other laws or ordinances; that his sole concern is whether the conditions of the zoning ordinance are satisfied; that enforcement of the sanitary code is not his function; that if an illegal business is conducted under the building permit, the matter is to be dealt with under sec. 80–12; that this is indicated by the fact that sec. 9–28 requires the building inspector to issue an occupancy permit where the buildings conform to the requirements of part IIIA constituting the zoning ordinances, and that the note attached to the certificate carefully points out that the certificate of occupancy does not grant permission to conduct a licensed business, or one otherwise prohibited by law; that plaintiff ought not to be subjected to double penalties by depriving it of its occupancy permit when it is clearly entitled to have the permit, and that it ought to be permitted to meet whatever issues may arise under the sanitary code as a single and separate proposition. It is pointed out that the prohibition of tanneries, except in locations prescribed by the ordinance, has no relation to the zoning code, but is a sanitary matter in the interests of public health.

Defendants contend, and the trial court held, that the application was for occupancy to operate a tannery, and not for the limited and allegedly innocuous purpose disclosed in the affidavit; that since the operation of the tannery did violate the sanitary code, the building inspector ought to take this into account in issuing a permit; that while the zoning ordinance

standing alone apparently makes mandatory the issuance of an occupancy permit, it cannot be assumed that the zoning ordinance contemplated the issuance of an occupancy permit when the use contemplated and disclosed in the application was forbidden by another ordinance, and that the sanitary provisions which are charter provisions would take precedence in any case over inconsistent provisions of the code.

The case is not without difficulty, but we are of the view that the trial court was in error. It is conceded that plaintiff's proposed use of the premises fully complies with part IIIA of the Milwaukee code constituting the Milwaukee zoning ordinance. As conceded by the trial judge, the language of sec. 9–28 of the zoning ordinance requires the building inspector to issue the certificate provided the proposed use conforms with the requirements of part IIIA. The building inspector is given no discretion in the premises, and we discover no power in the inspector to use the certificate as a means of enforcing ordinances having nothing to do with the zoning code. The certificate itself makes it clear that its issuance does not confer upon the certificate holder the right or privilege to conduct a licensed business or one otherwise prohibited by law. The certificate, therefore, does not in any manner prejudice the city of Milwaukee from proceeding to enforce such other ordinances as may prohibit the conduct of a tannery on the premises affected by the use certificate. The contentions that provisions of the sanitary code prohibiting the operation of a tannery at this location are somehow imported into the zoning ordinance or take precedence over it appear to us to be unsound. The zoning ordinance deals with its own subject matter, was enacted after the sanitary code, and presumably did not intend to incorporate such portions of the sanitary code as might be argued to relate to zoning. The building inspector had committed to him the enforcement of the zoning ordinance. We discover nothing in the provisions relating to the powers of the building inspector that impair the above conclusions. His powers under charter provisions that predate the zoning

laws are limited to ordinances relating to construction, repairing, or removing any building. They do not include zoning use, a matter unknown at the time when the charter provision was passed. The scope of his duties is indicated by the charter provision relied on by defendant which, so far as material, reads: "It shall also be the duty of such inspector of buildings to find out all cases of the violation of any of the laws of the state, or of any ordinances of such city of the first class, relating to the construction, repairing, or moving of any building as provided in this act." The general scope of the inspector's duties is clearly indicated by this provision, and the zoning ordinance adds such duties as are involved in enforcing part IIIA of the zoning ordinance. This does not invest the building inspector with a roving commission to enforce laws and ordinances beyond the scope plainly indicated above.

We conclude that the building commissioner had no power to refuse or to revoke the permit in this case upon the grounds that conduct of the business contemplated would violate some ordinance outside the scope of the zoning ordinances or general building regulations. The charter provisions relating to sanitation and health have no precedence over zoning provisions since each occupies a different field and neither one is in conflict with the other.

This view of the case renders it unnecessary to consider alternative arguments. For example, it is contended that plaintiff paid out large sums of money in acquiring the lease of the building and in preparing it for use in its business. We assume that this is an alternative argument because it is plain enough that if the certificate did not constitute a permit to conduct a tannery on this location, plaintiff had no right to rely on it or upon its ignorance of the provisions of the sanitary code, and to assert an estoppel on the basis of such reliance. The determination of this case is without prejudice to the right of the city to invoke the proper remedy to enforce the sanitary code. When and if proceedings are brought, based upon the

sanitary code, a number of issues proposed in this litigation would seem to be involved, but they are not properly here on this appeal. These include questions whether plaintiff's business constitutes the operation of a tannery within the contemplation of sec. 80–12 of the sanitary code, and whether this provision of the code is unconstitutional or invalid because unreasonable or prohibitory, or by reason of the fact that it is enforced in a discriminatory fashion.

Plaintiff ought not, however, to be subjected to penalties for violating part IIIA of the zoning ordinance when it plainly complies with that section, in addition to penalties under the sanitary code, if and when the conduct of its business is found to violate such code. Plaintiff is entitled to summary judgment enjoining defendant Gurda from revoking its permit, or interfering with its business, without prejudice to proper proceedings based on the sanitary code, if the facts warrant such action.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.